

UNITED STATES DISTRICT COURT

western district OF north carolina

CHARLOTTE DIVISION

| | |
|---|---|
| DOROTHY M. LEE, Derivatively on Behalf of) FAMILY DOLLAR STORES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HOWARD R. LEVINE, LEON LEVINE, R. ) JAMES KELLY, R. DAVID ALEXANDER, ) JR., CHARLES S. GIBSON, JR., C. MARTIN ) SOWERS, GEORGE R. MAHONEY, JR., ) MARK R. BERNSTEIN, SHARON ALLRED ) DECKER, EDWARD C. DOLBY, GLENN A. ) EISENBERG, JAMES G. MARTIN and DALE ) C. POND, ) <br> ) <br> Defendants, ) <br> ) <br> – and – ) <br> ) <br> FAMILY DOLLAR STORES, INC., a ) Delaware corporation, ) <br> ) <br> Nominal Defendant. ) <br> ) <br> ) | No. 3:06 CV 510 - W <br><br> VERIFIED DERIVATIVE COMPLAINT FOR Violations of the Federal securities laws and state law claims for BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, CONSTRUCTIVE FRAUD, WASTE OF CORPORATE ASSETS, UNJUST ENRICHMENT AND GROSS MISMANAGEMENT <br><br><br><br><br><br><br><br><br><br><br> DEMAND FOR JURY TRIAL |

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought by a shareholder of Family Dollar Stores, Inc. ("Family Dollar" or the "Company") on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants"). This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement, arising out of a scheme and wrongful course of business whereby Defendants allowed senior Family Dollar insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Family Dollar insiders. Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since at least 1995.

2.     Between 1995 and the present, Defendants also caused Family Dollar to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Family Dollar carried with them an exercise price that was ***not less than*** the fair market value of Family Dollar stock on the date of grant and issuance.

3.     In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be ***backdated*** to dates when the Company's shares were trading at or near the lowest price for that relevant period. By September 2006, Defendants' backdating

- 2 -

scheme had yielded stock option grants to the Company's executive officers worth millions of dollars. These grants contributed to Defendants' ability to sell over $206 million worth of Family Dollar stock.

4.      Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as North Carolina and Delaware law. By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: caused Family Dollar to issue false statements; diverted hundreds of millions of dollars of corporate assets to senior Family Dollar executives; and subjected Family Dollar to potential liability from regulators, including the SEC and the IRS.

5.      Defendants' gross mismanagement and malfeasance over the past decade has exposed Family Dollar and its senior executives to criminal and civil liability for issuing false and misleading financial statements. Specifically, Defendants caused or allowed Family Dollar to issue statements that failed to disclose or misstated the following: that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; that because of improperly recorded stock-based compensation expenses, the Company's financial results violated Generally Accepted Accounting Principles ("GAAP"); and that the Company's public disclosures presented an inflated view of Family Dollar's earnings and earnings per share.

6.      Defendants' malfeasance and mismanagement during the relevant period has wreaked hundreds of millions of dollars of damages on Family Dollar. The Company's senior executives were incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced stock options and to issue false financial statements to cover up their

- 3 -

misdeeds. Defendants' breaches of fiduciary duties in the administration of the Company's stock option plans so polluted the plans with grant date manipulations so as to void all grants made pursuant to the plans. The Company has now been mentioned as one of several companies likely to have manipulated options. Meanwhile, certain of the Defendants, who received under-priced stock options and/or knew material non-public information regarding Family Dollar's internal control problems, abused their fiduciary relationship with the Company by selling over $206 million worth of their personally held shares at artificially inflated prices during the relevant period. This action seeks recovery for Family Dollar against these faithless fiduciaries, as Family Dollar's Board of Directors, as currently composed, is simply unable or unwilling to do so.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under state law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement. In connection with the acts, conduct and other wrongs complained of herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

8. This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

9. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

10. Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C.

- 4 -

§78aa, as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. Family Dollar is located in and conducts its business in this District. Further, one or more of the Defendants either resides in or maintains executive offices in this District.

## PARTIES

11.     Plaintiff Dorothy M. Lee is a shareholder of Family Dollar, and holds and has continually held Family Dollar stock since 1989.

12.     Nominal party Family Dollar is a Delaware corporation with its principal executive offices located at 10401 Monroe Road, Charlotte, North Carolina.

13.     Defendant Howard R. Levine ("H. Levine") has been Chairman of the Board of Directors of Family Dollar since January 2003 and Chief Executive Officer ("CEO") since August 1998. Defendant H. Levine joined the Company in 1981 and served in various capacities until 1987, when he left the Company. H. Levine returned to Family Dollar in April 1996 as Vice President, General Merchandise Manager-Softlines from April 1996 until September 1996, as Senior Vice President, Merchandising and Advertising from September 1996 to April 1997, and as President and Chief Operating Officer ("COO") from April 1997 to August 1998, until his promotion to CEO in August 1998. Levine has served as a director of Family Dollar since 1997. H. Levin's father, Leon Levine, is founder and Chairman Emeritus of the Board of Directors of the Company. Because of H. Levine's positions, he knew the adverse non-public information about the business of Family Dollar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and

- 5 -

committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, H. Levine participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant H. Levine sold 415,000 shares of Family Dollar stock for proceeds of $13.1 million during the relevant period.

14.     Defendant Leon Levine ("L. Levine") founded Family Dollar in 1958 and currently serves as Chairman Emeritus of the Board. Previously, L. Levine served as CEO and Treasurer of Family Dollar from its inception in 1958 and as Chairman of the Board from 1969 until he retired in January 2003. L. Levine is the father of H. Levine. Because of L. Levine's positions, he knew the adverse non-public information about the business of Family Dollar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, L. Levine participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant L. Levine sold 9.5 million shares of Family Dollar stock for proceeds of over $143 million during the relevant period.

15.     Defendant R. James Kelly ("Kelly") has served as President and COO of Family Dollar since August 2006 and previously served as Vice Chairman, Chief Financial Officer

- 6 -

("CFO") and Chief Administrative Officer from January 1997 until his promotion in August 2006. Because of Kelly's positions, he knew the adverse non-public information about the business of Family Dollar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Kelly participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Kelly sold 758,000 shares of Family Dollar stock for proceeds of $23 million during the relevant period.

16.     Defendant R. David Alexander, Jr. ("Alexander") had been President and COO of Family Dollar from January 2003 until his resignation in August 2005. Alexander previously served in various executive positions from August 1995 until he was appointed President and COO in January 2003. Because of Alexander's positions, he knew the adverse non-public information about the business of Family Dollar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Alexander participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Alexander

- 7 -

sold 268,500 shares of Family Dollar stock for proceeds of $6.5 million during the relevant period.

17.    Defendant Charles S. Gibson, Jr. ("Gibson") has served as Executive Vice President, Supply Chain of Family Dollar since September 2003, and previously served as Vice President, Logistics in September 1997 until he was appointed to the position of Senior Vice President, Distribution and Logistics in October 1999. Because of Gibson's positions, he knew the adverse non-public information about the business of Family Dollar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Gibson participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Gibson sold 98,250 shares of Family Dollar stock for proceeds of $2.79 million during the relevant period.

18.    Defendant C. Martin Sowers ("Sowers") has served as Senior Vice President, Finance of Family Dollar since December 1991. Because of Sowers' position, he knew the adverse non-public information about the business of Family Dollar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. Defendant Sowers, by his specialized financial expertise, was in a unique position to

understand the business of Family Dollar, as well as its finances, markets and present and future business prospects. During the relevant period, Sowers participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Sowers sold 134,420 shares of Family Dollar stock for proceeds of over $3.3 million during the relevant period.

19. Defendant George R. Mahoney, Jr. ("Mahoney") has been a director of Family Dollar since 1987. Previously, Mahoney served as the Executive Vice President, General Counsel and Secretary of the Company from 1991 until his retirement in May 2005. Mahoney joined Family Dollar in 1976 as General Counsel. Because of Mahoney's position, he knew the adverse non-public information about the business of Family Dollar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Mahoney participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Mahoney sold 606,000 shares of Family Dollar stock for proceeds of over $14.4 million during the relevant period.

20. Defendant Mark R. Bernstein ("Bernstein") has been a director of Family Dollar since 1980. Because of Bernstein's position, he knew the adverse non-public information about the business of Family Dollar, as well as its finances, markets and present and future business

- 9 -

prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Bernstein participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Bernstein sold 25,000 shares of Family Dollar stock for proceeds of $430,038 during the relevant period.

21.     Defendant Sharon Allred Decker ("Decker") has been a director of Family Dollar since 1999. Because of Decker's position, she knew the adverse non-public information about the business of Family Dollar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith. During the relevant period, Decker participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. As a member of the Compensation Committee, defendant Decker controlled the other Defendants' stock option awards. As a member of the Nominating and Corporate Governance Committee, defendant Decker was responsible for Family Dollar's public financial statements. Based on her knowledge of material non-public information regarding the Company, defendant Decker sold 1,384 shares of Family Dollar stock for proceeds of $36,198 during the relevant period.

22.     Defendant Edward C. Dolby ("Dolby") has been a director of Family Dollar since 2003. Because of Dolby's position, he knew the adverse non-public information about the

- 10 -

business of Family Dollar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Dolby participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. As a member of the Compensation Committee, defendant Dolby controlled the other Defendants' stock option awards. As a member of the Audit Committee, defendant Dolby was responsible for Family Dollar's public financial statements.

23.     Defendant Glenn A. Eisenberg ("Eisenberg") has been a director of Family Dollar since 2002. Because of Eisenberg's position, he knew the adverse non-public information about the business of Family Dollar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Eisenberg participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. As a member (Chair) of the Audit Committee, defendant Eisenberg was responsible for Family Dollar's public financial statements. Defendant Eisenberg is considered a financial expert on the Board.

24.     Defendant James G. Martin ("Martin") has been a director of Family Dollar since 1996. Because of Martin's position, he knew the adverse non-public information about the business of Family Dollar, as well as its finances, markets and present and future business

- 11 -

prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Martin participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. As a member (Chair) of the Compensation Committee, defendant Martin controlled the other Defendants' stock option awards. As a member of the Nominating and Corporate Governance Committee, defendant Martin was responsible for Family Dollar's public financial statements.

25. Defendant Dale C. Pond ("Pond") has been a director of Family Dollar since April 2006. Defendant Pond serves on the Compensation and Audit Committees.

26. The defendants identified in ¶¶13 and 19-24 are referred to herein as the "Director Defendants." The defendants identified in ¶¶13 and 15-19 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶13-21 are referred to herein as the "Insider Selling Defendants."

**DEFENDANTS' DUTIES**

27. Each officer and director of Family Dollar named herein owed the Company and Family Dollar shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of Family Dollar's directors and officers complained of herein involves knowing, intentional and culpable violations of their obligations as officers and directors of Family Dollar. Further, the misconduct of Family Dollar's officers has been ratified by Family Dollar's Board, which has failed to take any legal action on behalf of

- 12 -

the Company against them.

28.     By reason of their positions as officers, directors and fiduciaries of Family Dollar and because of their ability to control the business and corporate affairs of the Company, the Defendants owed Family Dollar and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage Family Dollar in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Family Dollar and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control over Family Dollar to divert assets to themselves via improper and/or unlawful practices. Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

29.     Because of their positions of control and authority as directors or officers of Family Dollar, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein. As to the Director Defendants, these acts include: agreement to and/or acquiescence in Defendants' option backdating scheme; willingness to cause Family Dollar to disseminate false Proxy Statements for 1995-2005, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to backdate their stock option grants in order to manipulate the strike price of the stock options they received. Because of their positions with Family Dollar, each of the Defendants was aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to Family Dollar

- 13 -

shareholders and the financial markets but failed to do so.

30.    Between 1995 and 2005, Defendants repeated in each Proxy Statement that the stock option grants made during that period carried an exercise price that was not less than the fair market value of Family Dollar stock on the date granted, as calculated by the public trading price of the stock at the market's close on that date. However, Defendants concealed until September 2006 that the stock option grants were repeatedly and consciously backdated to ensure that the strike price associated with the option grants was at or near the lowest trading price for that fiscal period. Due to Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff seeks to have the directors' and officers' plans voided and gains from those plans returned to the Company. In the alternative, plaintiff seeks to have all of the unexercised options granted to defendants between at least 1995 and 2005 cancelled, the financial gains obtained via the exercise of such options returned to the Company and to have Defendants revise the Company's financial statements to reflect the truth concerning these option grants.

31.    To discharge their duties, the directors of Family Dollar were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the business and financial affairs of Family Dollar. By virtue of such duties, the officers and directors of Family Dollar were required, among other things, to:

(a)    manage, conduct, supervise and direct the business affairs of Family Dollar in accordance with all applicable law (including federal and state laws, government rules and regulations and the charter and bylaws of Family Dollar);

(b)    neither engage in self-dealing nor knowingly permit any officer, director or

- 14 -

employee of Family Dollar to engage in self-dealing;

(c)     neither violate nor knowingly permit any officer, director or employee of Family Dollar to violate applicable laws, rules and regulations;

(d)     remain informed as to the status of Family Dollar's operations, including its practices in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of candor to the Company's shareholders;

(e)     prudently protect the Company's assets, including taking all necessary steps to recover corporate assets (cash, stock options) improperly paid to Company executives and directors together with the related costs (professional fees) proximately caused by the illegal conduct described herein;

(f)     establish and maintain systematic and accurate records and reports of the business and affairs of Family Dollar and procedures for the reporting of the business and affairs to the Board of Directors and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(g)     maintain and implement an adequate, functioning system of internal legal, financial and accounting controls, such that Family Dollar's financial statements – including its expenses, accounting for stock option grants and other financial information – would be accurate and the actions of its directors would be in accordance with all applicable laws;

(h)     exercise control and supervision over the public statements to the

- 15 -

securities markets and trading in Family Dollar stock by the officers and employees of Family Dollar; and

(i)     supervise the preparation and filing of any financial reports or other information required by law from Family Dollar and to examine and evaluate any reports of examinations, audits or other financial information concerning the financial affairs of Family Dollar and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

32.     Each Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Family Dollar, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders which Defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the Defendants who were also officers and/or directors of the Company during the relevant period has been ratified by the Director Defendants who comprised Family Dollar's entire Board during the relevant period.

33.     Defendants breached their duties of loyalty and good faith by allowing or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Defendants from taking such illegal actions.  As a result, Family Dollar has expended and will continue to expend significant sums of money.  Such

expenditures include, but are not limited to:

      (a)     improvidently paid executive compensation;

      (b)     increased capital costs as a result of the loss of market capitalization and the Company's damaged reputation in the investment community;

      (c)     costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

      (d)     incurring possible IRS penalties for improperly reporting compensation.

34.     These actions have irreparably damaged Family Dollar's corporate image and goodwill. For at least the foreseeable future, Family Dollar will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Family Dollar's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## AIDING AND ABETTING AND CONCERTED ACTION

35.     In committing the wrongful acts alleged herein, Defendants have pursued or joined in the pursuit of a common course of conduct and acted in concert with one another in furtherance of their common plan.

36.     During all times relevant hereto, Defendants collectively and individually initiated a course of conduct which was designed to and did: conceal the fact that the Company was allowing its directors and senior officers to divert hundreds of millions of dollars to Family Dollar insiders and directors and causing Family Dollar to misrepresent its financial results; maintain Defendants' executive and directorial positions at Family Dollar and the profits, power and prestige which Defendants enjoyed as a result of these positions; and deceive the investing

- 17 -

public, including shareholders of Family Dollar, regarding Defendants' compensation practices and Family Dollar's financial performance.

37.     The purpose and effect of Defendants' common course of conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning the Company's operation and financial condition and to artificially inflate the price of Family Dollar common stock so they could dispose of millions of dollars of their own Family Dollar stock, and enhance their executive and directorial positions and receive the substantial compensation they obtained as a result thereof.

38.     Defendants accomplished their common enterprise and/or common course of conduct by causing the Company to purposefully and/or recklessly engage in the option backdating scheme alleged herein and misrepresent Family Dollar's financial results. Each of the Defendants was a direct, necessary, and substantial participant in the common enterprise and/or common course of conduct complained of herein.

39.     Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

40.     Family Dollar owns or leases, and operates a chain of self-service retail discount stores in 44 states and the District of Columbia, catering primarily low to lower middle-income

- 18 -

consumers with a range of general merchandise in neighborhood stores. The goods offered by the Company generally have price points that range from under $1 to $10, and include apparel, food, cleaning and paper products, home decor, beauty and health aids, toys, pet products, automotive products, domestics and seasonal goods.

41.     Throughout the relevant period, Defendants caused Family Dollar to grant them millions of stock options permitting them to buy Family Dollar stock which they could in turn sell as the Company's stock price increased. A stock option gives the holder the right to buy a stock at a certain price in the future. Typically, companies set that price at the same time their directors approve an option grant, with an exercise price – also known as the "strike price" – usually set at the closing price of the stock that day, the closing price of the night before or by computing an average of the high and low prices on the day of the vote.

42.     However, many of the hundreds of thousands of options granted to Family Dollar's executives had a hidden, valuable component: they were misdated, often making them even more significantly valuable. The misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the date of the grant was picked retroactively (*e.g.,* a decision in February to pick a January date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized – and sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant on January 15, but there is a period after January 15 in which the grantor waits to see if a more advantageous price occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to complete the option grant process by the date of the grant (*e.g.,* where there is a decision to issue a grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees, and although the work is not

- 19 -

complete on those grants as of the stated grant date, that date is nonetheless used).

## STOCK OPTION GRANTS

43. Certain of Family Dollar's manipulative stock option grants are described below (unadjusted for subsequent stock splits):

### 1996 Option Grants

44. Defendants dated many of Family Dollar's 1996 option grants as of September 27, 1996 at $11.34 per share. This option grant like many of the Company's other option grants occurred immediately before a large increase in Family Dollar's stock price. By October 16, 1996, Family Dollar's stock closed at $12.33 per share – an increase of 9%. Defendants H. Levine, Mahoney and Alexander received 15,000, 30,000 and 15,000 options, respectively, at this price.

### 1999 Option Grants

45. Defendants dated many of Family Dollar's 2001 option grants as of February 10, 1999 at $18.75 per share, below the closing price for the day, which was $19.00 per share, and near the closing price low for the month. Family Dollar's stock closed between $18.00 and $20.44 per share in February 1999. This option grant also occurred immediately before a large increase in Family Dollar's stock price. By March 5, 1999, Family Dollar's stock closed at $22.13 per share – an increase of 18%. Defendant Kelly received 150,000 options at this price. Defendants further dated many of Family Dollar's 1999 option grants as of September 13, 1999 at $18.50 per share, below the closing price for the day, which was $18.69 per share, and at the closing price low for the month. Family Dollar's stock closed between $18.50 and $21.50 per share in September 1999. This option grant also occurred immediately before a large increase in

- 20 -

Family Dollar's stock price. By October 11, 1999, Family Dollar's stock closed at $23.25 per share – an increase of 26%. Defendants H. Levine, Mahoney and Alexander received 100,000, 50,000 and 45,000 options, respectively, at this price.

**2001 Option Grants**

46.     Defendants dated many of Family Dollar's 2001 option grants as of September 17, 2001 at $24.25 per share, below the closing price low for the month. Family Dollar's stock closed between $24.56 and $30.09 per share in September 2001. This option grant also occurred immediately before a large increase in Family Dollar's stock price. By October 16, 2001, Family Dollar's stock closed at $29.58 per share – an increase of 22%. Defendants H. Levine, Kelly, Mahoney and Alexander received 150,000, 85,000, 70,000 and 85,000 options, respectively, at this price.

**2003 Option Grants**

47.     Defendants dated many of Family Dollar's 2003 option grants as of September 29, 2003 at $40.75 per share. Defendants timed this option grant immediately prior to the announcement of positive financial results. On October 1, 2003, the Company issued a press release entitled "Family Dollar Reports Record Sales and Earnings for the Fourth Quarter and for Fiscal 2003." On news of these positive results, Family Dollar's stock began to climb, closing at $42.74 per share on October 14, 2003. Defendants H. Levine, Kelly, Mahoney and Alexander received 200,000, 110,000, 95,000 and 110,000 options, respectively, at this price.

48.     Below are certain of Family Dollar's stock option grants which occurred right before significant stock price increases (adjusted for stock splits):

- 21 -



**Family Dollar Stores**

**August 26, 1996 - October 28, 1996**

Case 3:06-cv-00510-FDW-CH   Document 1   Filed 12/15/06   Page 22 of 48

**Family Dollar Stores**

January 8, 1999 - March 10, 1999



2/10/99
@ $18.75

**Family Dollar Stores**

August 13, 1999 - October 13, 1999



9/13/99
@ $18.50

- 23 -

Case 3:06-cv-00510-FDW-CH   Document 1   Filed 12/15/06   Page 23 of 48



**Family Dollar Stores**

**August 17, 2001 - October 17, 2001**

9/17/01
@ $24.25



**Family Dollar Stores**

**August 29, 2003 - October 29, 2003**

9/29/03
@ $40.75

- 24 -

49.     Complicating matters and magnifying the harm to Family Dollar, during the relevant period, Family Dollar's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate. The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated. They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

50.     Specifically, in many instances the reported dates Family Dollar stock options were granted differed from the dates on which the options appear to have been actually granted. The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose. *In almost every case of misdating, the price of Family Dollar shares on the reported option-grant date was lower than the share price on the actual day the options were issued.*

51.     Through their fiduciary duties of care, good faith and loyalty, Defendants owed to Family Dollar a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements. This material non-public information included the problems Family Dollar faced because of its

- 25 -

deficient internal controls. Furthermore, Defendants who were members of the Audit Committee during the relevant period, had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies. Defendants who were officers of Family Dollar had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, Defendants who were directors of Family Dollar had ample opportunity to discuss this material information with fellow directors at any of the scores of Board meetings that occurred during the relevant period as well as at committee meetings of the Board. Despite these duties, Defendants negligently, recklessly and/or intentionally caused or allowed, by their actions or inactions, the misleading statements to be disseminated by Family Dollar to the investing public and the Company's shareholders during the relevant period.

52. Specifically, since at least 1995, Defendants have caused Family Dollar to report false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings as follows:

| FISCAL YEAR[1] | REPORTED EARNINGS (in millions) | REPORTED DILUTED EARNINGS PER SHARE FROM CONTINUING OPERATIONS |
|---|---|---|
| 1995 | $58.11 | $0.34 |
| 1996 | $60.59 | $0.36 |
| 1997 | $74.68 | $0.44 |

---

[1] Family Dollar's fiscal year ends the last Sunday in August.

- 26 -

| 1998 | $103.29 | $0.60 |
| 1999 | $140.08 | $0.81 |
| 2000 | $172.02 | $1.00 |
| 2001 | $189.51 | $1.10 |
| 2002 | $216.93 | $1.25 |
| 2003 | $247.48 | $1.43 |
| 2004 | $262.69 | $1.53 |
| 2005 | $217.51 | $1.30 |

53.     Moreover, throughout the relevant period certain Defendants exercised many of these stock options contributing to their ability to sell over $206 million worth of Family Dollar stock they obtained often by cashing in under-priced stock options:

| Defendant | Dates of Sales | Shares Sold | Proceeds Received |
|---|---|---|---|
| H. Levine | 1/16/01 – 7/14/03 | 415,000 | $13,159,150 |
| L. Levine | 3/17/97 – 3/22/00 | 9,589,350 | $143,036,479 |
| Mahoney | 2/11/97 – 7/11/06 | 606,000 | $14,433,816 |
| Alexander | 2/9/98 – 9/2/05 | 268,500 | $6,521,210 |
| Bernstein | 7/18/96 – 7/14/03 | 25,000 | $430,038 |
| Decker | 12/9/02 – 8/15/05 | 1,384 | $36,198 |
| Gibson | 1/24/01 – 5/11/06 | 98,250 | $2,795,206 |
| Kelly | 10/8/01 – 1/14/04 | 758,000 | $23,017,634 |
| Sowers | 2/10/97 – 7/11/05 | 134,420 | $3,348,300 |
| | | | |
| TOTAL | | 11,895,904 | $206,778,031 |

54.     On September 25, 2006, the Company announced that it had commenced an internal probe regarding its backdating of stock option grant practices.

55.     In effect, during the relevant period, the Defendants caused Family Dollar's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed Family Dollar to issue statements that failed to disclose or misstated the following:    that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections;  that because of improperly

- 27 -

recorded stock-based compensation expenses the Company's financial results violated GAAP; and that the Company's public disclosures presented an inflated view of Family Dollar's earnings and earnings per share.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

56. Plaintiff brings this action derivatively in the right and for the benefit of Family Dollar to redress injuries suffered and to be suffered by Family Dollar as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

57. Plaintiff will adequately and fairly represent the interests of Family Dollar and its shareholders in enforcing and prosecuting its rights.

58. Plaintiff is an owner of Family Dollar stock and was an owner of Family Dollar stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

59. Based upon the facts set forth throughout this Complaint, applicable law and the longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon the Family Dollar Board of Directors to institute this action against the officers and members of the Family Dollar Board of Directors is excused as futile. A pre-filing demand would be a useless and futile act because:

(a) The members of Family Dollar's Board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the

- 28 -

violations of law complained of herein. These are people they have developed professional relationships with, who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

(b)     The Family Dollar Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Family Dollar's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents, or conversations and connections with other corporate officers, employees and directors and attendance at management and/or Board meetings, each of the Defendants knew the adverse non-public information regarding the improper stock option grants and financial reporting. Pursuant to their specific duties as Board members, the Director Defendants are charged with the management of the Company and to conduct its business affairs. Defendants breached the fiduciary duties that they owed to Family Dollar and its shareholders in that they failed to prevent and correct the improper stock option granting and financial reporting. Certain directors are also dominated and controlled by other directors and cannot act independently of them. Thus, the Family Dollar Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of its members participated personally in the wrongdoing or are dependent upon other Defendants who did.

(c)     The acts complained of constitute violations of the fiduciary duties owed by Family Dollar's officers and directors and these acts are incapable of ratification.

- 29 -

(d)     The members of Family Dollar's Board have benefited, and will continue to benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of control and the perquisites derived thereof, and are incapable of exercising independent objective judgment in deciding whether to bring this action.

(e)     Any suit by the current directors of Family Dollar to remedy these wrongs would likely further expose the liability of Defendants under the federal securities laws, which could result in additional civil and/or criminal actions being filed against one or more of the Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

(f)     Family Dollar has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the current Board has not filed any lawsuits against itself or others who were responsible for that wrongful conduct to attempt to recover for Family Dollar any part of the damages Family Dollar suffered and will suffer thereby.

(g)     In order to properly prosecute this lawsuit, it would be necessary for the directors to sue themselves and the other Defendants, requiring them to expose themselves and their comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS penalties. This they will not do.

(h)     Family Dollar's current and past officers and directors are protected against personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance which they caused the Company to purchase for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of Family Dollar. However, due to certain changes in the language of directors' and

- 30 -

officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the Defendants in this case contain provisions which eliminate coverage for any action brought directly by Family Dollar against these Defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Family Dollar, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

(i) In order to bring this action for breaching their fiduciary duties, the members of the Family Dollar Board would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Company, who are their personal friends and with whom they have entangling financial alliances, interests and dependencies, which they would not do.

60. Plaintiff has not made any demand on shareholders of Family Dollar to institute this action since such demand would be a futile and useless act for the following reasons:

(a) Family Dollar is a publicly traded company with approximately 151.6 million shares outstanding, and thousands of shareholders;

(b) making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c) making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

**THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT**

- 31 -

## ON FAMILY DOLLAR'S FINANCIAL STATEMENTS

**The Fiscal 1995 Form 10-K**

61.     On or about November 22, 1995, the Company filed its fiscal 1995 Form 10-K with the SEC. The fiscal 1995 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1995 Form 10-K included Family Dollar's 1995 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Family Dollar's compensation expense was understated and its net earnings were overstated.

**The Fiscal 1996 Form 10-K**

62.     On or about November 21, 1996, the Company filed its fiscal 1996 Form 10-K with the SEC. The fiscal 1996 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1996 Form 10-K included Family Dollar's 1996 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Family Dollar's compensation expense was understated and its net earnings were overstated.

**The Fiscal 1997 Form 10-K**

63.     On or about November 20, 1997, the Company filed its fiscal 1997 Form 10-K with the SEC. The fiscal 1997 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1997 Form 10-K included Family Dollar's 1997 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Family Dollar's compensation expense was understated and its net earnings were overstated.

**The Fiscal 1998 Form 10-K**

- 32 -

64.     On or about November 25, 1998, the Company filed its fiscal 1998 Form 10-K with the SEC. The fiscal 1998 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1998 Form 10-K included Family Dollar's 1998 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Family Dollar's compensation expense was understated and its net earnings were overstated.

**The Fiscal 1999 Form 10-K**

65.     On or about November 24, 1999, the Company filed its fiscal 1999 Form 10-K with the SEC. The fiscal 1999 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1999 Form 10-K included Family Dollar's 1999 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Family Dollar's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2000 Form 10-K**

66.     On or about November 22, 2000, the Company filed its fiscal 2000 Form 10-K with the SEC. The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2000 Form 10-K included Family Dollar's 2000 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Family Dollar's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2001 Form 10-K**

67.     On or about November 21, 2001, the Company filed its fiscal 2001 Form 10-K

- 33 -

with the SEC. The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2001 Form 10-K included Family Dollar's 2001 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Family Dollar's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2002 Form 10-K**

68.     On or about November 20, 2002, the Company filed its fiscal 2002 Form 10-K with the SEC. The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2002 Form 10-K included Family Dollar's 2002 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Family Dollar's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2003 Form 10-K**

69.     On or about November 26, 2003, the Company filed its fiscal 2003 Form 10-K with the SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2003 Form 10-K included Family Dollar's 2003 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Family Dollar's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2004 Form 10-K**

70.     On or about November 5, 2004, the Company filed its fiscal 2004 Form 10-K with the SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the

- 34 -

public. The fiscal 2004 Form 10-K included Family Dollar's 2004 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Family Dollar's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2005 Form 10-K**

71.　　On or about November 7, 2005, the Company filed its fiscal 2005 Form 10-K with the SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2005 Form 10-K included Family Dollar's 2005 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Family Dollar's compensation expense was understated and its net earnings were overstated.

DEFENDANTS' SCHEME BEGINS TO UNRAVEL

72.　　The 1995-2005 Proxy Statements concealed Defendants' option backdating scheme. Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on proxy proposals between at least 1995 and 2005. Defendants have been unjustly enriched at the expense of Family Dollar, which has received and will receive less money from the Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

73.　　On September 25, 2006, the Company announced that it had commenced an internal probe regarding its backdating of stock option grant practices.

74.　　Each dollar diverted to Defendants via the option backdating scheme has come at the expense of the Company. For example, if H. Levine's 150,000 options granted in September

- 35 -

2001 had not been manipulated, but rather had a strike price of $30.09, instead of the $24.25 strike price, which was below the closing price low for the month, when H. Levine exercised those options the Company would receive $4.5 million instead of $3.6 million – a cost to the Company of $900,000 for this single instance of option backdating.

## THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT

75.     Unlike most companies which avoid such option backdating abuse by issuing stock option grants at the same time each year, which eliminates the potential for backdating, Defendants ensured that executives would not have any such restrictions.  Given the many times Family Dollar's grants were the low of the month in which options were granted, the date of their stock option grants was clearly more than merely coincidental.

76.     As a result of the backdating of options, Defendants have been unjustly enriched at the expense of Family Dollar, which has received and will receive less money from Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

## TOLLING OF THE STATUTE OF LIMITATIONS

77.     The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully concealed their manipulation of the stock option plans, through strategic timing and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Family Dollar's public investors that Family Dollar's option grants were being administered by a committee of independent directors and by failing to disclose that backdated options were, in fact, actually issued on dates other than those disclosed, and that strategically timed option grants were issued based on the manipulation of insider information that ensured that the true fair

- 36 -

market value of the Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

78.    Family Dollar's public investors had no reason to know of the Defendants' breaches of their fiduciary duties until September 2006, when the Company announced its internal probe of its historical stock option grant practices.

79.    Finally, as fiduciaries of Family Dollar and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from Family Dollar's public shareholders the facts that give rise to the claims asserted herein, *i.e.*, that the Family Dollar Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

## COUNT I

### Violations of §14(a) of the Exchange Act Against
### All Defendants

80.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

81.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

82.    The 1995-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that Defendants were causing Family Dollar to engage

- 37 -

in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 1995.

83.     In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

84.     The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement.  The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

85.     The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT I

### Accounting

86.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

87.     At all relevant times, Defendants, as directors and/or officers of Family Dollar, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

88.     In breach of their fiduciary duties owed to Family Dollar and its shareholders, the Defendants caused Family Dollar, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of Family Dollar.  By this wrongdoing, the Defendants breached their fiduciary duties owed to Family Dollar and its shareholders.

- 38 -

90.     The Defendants possess complete and unfettered control over their improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to the Defendants.

91.     As a result of Defendants' misconduct, Family Dollar has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

92.     Plaintiff demands an accounting be made of all stock option grants made to Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to the Defendants, as well as the disposition of any proceeds received by the Defendants via sale or other exercise of backdated stock option grants received by the Defendants.

## COUNT I

### Breach of Fiduciary Duty and/or Aiding and Abetting
### Against All Defendants

93.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

94.     Each of the Defendants agreed to and did participate with H. Levine, Kelly, Mahoney and Alexander and the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.

95.     The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to Family Dollar and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of

- 39 -

the interests of Family Dollar and its shareholders.

96.     As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to Family Dollar and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

97.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Family Dollar and its public shareholders.

98.     As a proximate result of Defendants' conduct, in concert with H. Levine, Kelly, Mahoney and Alexander, Family Dollar has been injured and is entitled to damages.

## COUNT I

### Abuse of Control Against All Defendants

99.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

100.    The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, Family Dollar, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at Family Dollar.  As a part of this scheme, Defendants actively made and/or participated in the making of or aided and abetted the making of, misrepresentations regarding Family Dollar.

101.    Defendants' conduct constituted an abuse of their ability to control and influence

- 40 -

Family Dollar.

102. By reason of the foregoing, Family Dollar has been damaged.

## COUNT I

### Gross Mismanagement Against All Defendants

103. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

104. Defendants had a duty to Family Dollar and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Family Dollar.

105. Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Family Dollar in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Family Dollar's affairs and in the use and preservation of Family Dollar's assets.

106. During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Family Dollar to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Family Dollar, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged Family Dollar.

107. By reason of the foregoing, Family Dollar has been damaged.

## COUNT I

### Constructive Fraud Against All Defendants

- 41 -

108.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

109.    As corporate fiduciaries, Defendants owed to Family Dollar and its shareholders a duty of candor and full accurate disclosure regarding the true state of Family Dollar's business and assets and their conduct with regard thereto.

110.    As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Family Dollar's shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of Family Dollar. Thus they have committed constructive fraud and violated their duty of candor.

111.    By reason of the foregoing, Family Dollar has been damaged.

## COUNT I

### Corporate Waste Against All Defendants

112.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

113.    By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision and by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused Family Dollar to waste valuable corporate assets.

114.    As a result of Defendants' corporate waste, they are liable to the Company.

## COUNT I

### Unjust Enrichment Against All Defendants

- 42 -

115. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

116. As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of Family Dollar, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

117. All the payments and benefits provided to the Defendants were at the expense of Family Dollar. The Company received no benefit from these payments. Family Dollar was damaged by such payments.

118. Certain of the Defendants sold Family Dollar stock for a profit during the period of deception, misusing confidential non-public corporate information. These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Family Dollar. A constructive trust for the benefit of the Company should be imposed thereon.

## COUNT I

### Against the Officer Defendants for Rescission

119. Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

120. As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and Family Dollar entered into during the relevant period were obtained through Defendants' fraud, deceit and abuse of control. Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Officer Defendants' employment agreements and the

- 43 -

Company's stock option plan which was also approved by Family Dollar shareholders and filed with the SEC.

121. All contracts which provide for stock option grants between the Officer Defendants and Family Dollar and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

## COUNT I

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

122. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

123. At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Family Dollar common stock on the basis of such information.

124. The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Family Dollar common stock.

125. At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of Family Dollar common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

126. Since the use of the Company's proprietary information for their own gain

- 44 -

constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.     Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

B.     Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and imposing a constructive trust thereon;

C.     Directing Family Dollar to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote adoption of the following Corporate Governance policies:

(i)     a proposal requiring that the office of CEO of Family Dollar and Chairman of the Family Dollar Board of Directors be permanently held by separate individuals and that the Chairman of the Family Dollar Board meets rigorous "independent" standards;

- 45 -

(ii)     a proposal to strengthen the Family Dollar Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

(iii)    appropriately test and then strengthen the internal audit and control function;

(iv)    rotate independent auditing firms every five years;

(v)     control and limit insider stock selling and the terms and timing of stock option grants; and

(vi)    reform executive compensation.

D.     Ordering the imposition of a constructive trust over Defendants' stock options and any proceeds derived therefrom;

E.     Awarding punitive damages;

F.     Awarding costs and disbursements of this action, including reasonable attorneys', accountants' and experts' fees; and

G.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: December 14, 2006

L. BRUCE McDANIEL (N.C. State Bar #5025)
WILLIAM E. ANDERSON (N.C. State Bar #098)
mcDANIEL & ANDERSON, L.L.P.
Lafayette Square
4942 Windy Hill Drive
P.O. Box 58186
Raleigh, NC 27658
Telephone: 919/872-3000
919/790-9273 (fax)

- 46 -

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
TRAVIS E. DOWNS III
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
Attorneys for Plaintiff

S:\CptDraft\Derivative\Cpt Family Dollar Stores Derv.doc

## FAMILY DOLLAR STORES, INC. VERIFICATION

I, Dorothy M. Lee, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: ___1 December 2006___     ___Dorothy M. Lee___
                                SIGNATURE